| | |
|---|---|
| UNITED STATES DISTRICT COURT | |
| NORTHERN DISTRICT OF CALIFORNIA | |

| | |
|---|---|
| TAIRAY TAQWAIN MORRIS,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF CALIFORNIA, et al.,<br><br>Defendants. | Case No. 19-cv-02620-HSG<br><br>**ORDER SCREENING COMPLAINT; DENYING MOTION TO APPOINT COUNSEL**<br><br>Re: Dkt. No. 4 |

## INTRODUCTION

Plaintiff, an inmate at Pelican Bay State Prison ("PBSP"), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis* in a separate order. His complaint (Dkt. No. 1) is now before the Court for review under 28 U.S.C. § 1915A.

## DISCUSSION

### A. Standard of Review

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity, or from an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b) (1), (2). *Pro se* pleadings must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not

necessary; the statement need only 'give the defendant fair notice of what the . . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). A complaint must proffer "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

**B.      Complaint**

Plaintiff names as defendants the state of California, the Secretary of the California Department of Corrections and Rehabilitation ("CDCR") Ralph Diaz, the CDCR, PBSP Warden Jim Robertson, California Correctional Health Care Services ("CCHCS"), PBSP doctor Nancy Adams, PBSP doctor Sue Risenhoover, and PBSP nurse Susan Waddell. He sues these defendants in both their individual and official capacities. Plaintiff alleges that Defendants violated the Eighth Amendment's prohibition on deliberate indifference to an inmate's serious medical needs delayed treating his knees, foot and toes when they waited three years to provide him access to a podiatrist, orthopedist, and an MRI, resulting in a meniscal tear in his right knee, knee osteoarthritis, tinea pedis, and foot ulcers. Plaintiff further alleges that Defendants the State of California, Warden Robertson, CDCR Secretary Diaz, CDCR, and CCHCS violated his rights under the Americans with Disabilities Act ("ADA") when they refused to transfer him to a prison with an on-site orthopedist and podiatrist, and when they refused to provide him with a wheelchair and transfer him to a building with a wheelchair ramp. Plaintiff seeks compensatory and punitive damages.

      **1.      ADA Claim**

Plaintiff alleges that Defendants the state of California, Warden Robertson, CDCR

Secretary Diaz, the CDCR and the CCHCS violated his rights under the ADA when they refused to accommodate his needs for an on-site orthopedist and podiatrist, a wheelchair, and housing with a wheelchair ramp. "To state a claim of disability discrimination under Title II of the ADA, the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability, (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities, (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity, and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); 42 U.S.C. § 12132.

"[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA . . ." *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002). Nor can individuals be sued in their individual capacities directly under the statute. *See Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (en banc) ("Title II provides disabled individuals redress for discrimination by a 'public entity.' *See* 42 U.S.C. § 12132. That term, as it is defined within the statute, does not include individuals. *See* 42 U.S.C. § 12131(1)."); *cf. Butler v. City of Prairie Village*, 172 F.3d 736, 744 (10th Cir. 1999) (holding that there is no liability under Title I against individuals who do not otherwise qualify as "employers" under the statutory definition). However, a state official sued in his official capacity is a "public entity" under Title II of the ADA. *See Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1187–88 (9th Cir. 2003); *see also Garcia v. S.U.N.Y. Health Servs. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) ("Insofar as Garcia is suing the individual defendants in their official capacities [under Title II of the ADA], he is seeking damages from [the state of] New York"). A public entity can be liable for damages under Title II of the ADA "if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons." *Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008). Deliberate indifference requires: (1) "knowledge that a harm to a federally protected right is substantially likely, and" (2) "a failure to act upon that the (sic) likelihood." *Duvall v. Cnty. of Kitsap*, 260 F.3d

3

1124, 1138 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001). Punitive damages may not be awarded in suits brought under Title II of the ADA. *Barnes v. Gorman*, 536 U.S. 181, 189 (2002).

Liberally construed, the complaint states a claim for compensatory damages under the ADA against Defendants Robertson and Diaz in their official capacities, and against the state of California, the CDCR and the CCHCS based on the allegations that they acted with deliberate indifference in refusing to provide reasonable accommodations for Plaintiff as a disabled person. The Court DISMISSES with prejudice Plaintiff's ADA claims against Defendants Robertson and Diaz in their individual capacities, and Plaintiff's request for punitive damages for the ADA violations.

### 2. Section 1983 Claims Against State Agencies and Official Capacity Individuals

The Eleventh Amendment bars suits against a state and its agencies, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear . . . that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."), and against state officials sued in their official capacities, *see Kentucky v. Graham*, 473 U.S. 159, 169–70 (1985). Accordingly, the Court DISMISSES with prejudice the Eighth Amendment claim against California, the CDCR, the CCHCS, and against the individual defendants in their official capacities. *See also Brown v. Cal. Dep't of Corrs.*, 554 F.3d 747, 752 (9th Cir. 2009) (California Department of Corrections and California Board of Prison Terms entitled to Eleventh Amendment immunity).

### 3. Eighth Amendment Claim

Plaintiff alleges that Defendants' three-year delay in providing him an MRI and access to a podiatrist and orthopedist resulted in serious physical injuries to, and extensive degeneration of, his feet and right knee and an amputation recommendation, in violation of the Eighth Amendment.

Plaintiff describes the lack of, or delay in, treatment as follows. In January 2015, Plaintiff was suffering an infection between the fourth and fifth toes on his left foot. On June 15, 2015, Plaintiff met with Defendant RN Waddell for a follow-up visit regarding his foot infection and informed her that he needed to see a physician regarding his foot infection. Defendant Waddell

4

failed to notify or consult a physician regarding Plaintiff's foot infection; gave Plaintiff Tylenol; and instructed Plaintiff to keep his toes dry, avoid creams, soap or water, and to keep his left foot elevated. On June 25, 2015, in response to Plaintiff's continuing complaints, Defendant Dr. Risenhoover ordered an x-ray of Plaintiff's left foot which indicated soft tissue swelling of the fourth and fifth toes. Defendant Risenhoover diagnosed Plaintiff with an orthopedic disorder. On October 16, 2015, Plaintiff notified Defendant Risenhoover that he was experiencing swelling in his right leg, but Plaintiff did not receive any treatment in response. From October 23, 2016 to February 13, 2017, Plaintiff was not seen by a nurse and did not receive treatment for his toe fungus or knee pains. On February 14, 2017, Plaintiff met with Defendant Dr. Adams about the swelling in his right knee. Defendant Adams recommended that Plaintiff keep his right knee elevated. On March 16, 2017, Plaintiff's knee was evaluated by RN Carter, who informed Defendant Adams about the swelling of Plaintiff's right knee. Defendant Adams stated that she would not consider seeing Plaintiff prior to April 2017. On May 1, 2017, Plaintiff met with Defendant Adams and informed her that the knee pain was so severe that he could barely walk. Dr. Adams ordered an x-ray, which took place on May 4, 2017, and indicated that Plaintiff had a small effusion, moderate patellofemoral and medial compartment osteoarthritis. Defendant Adams diagnosed Plaintiff with right knee osteoarthritis. On November 25, 2018, Plaintiff submitted a sick call complaining about the pain in his knees and toes and requesting an MRI of his knee and an x-ray of his toes. On November 27, 2018, Plaintiff met with Defendant Adams, who ordered general surgery for Plaintiff's non-healing foot ulcers between his fourth and fifth toes. It is unclear if a surgery took place. On December 15, 2018, Plaintiff met again with Defendant Adams, in response to a December 10, 2018 sick call request regarding the swelling in his right knee and requesting a knee brace. Defendant Adams ordered an x-ray, a knee brace and a cane. Plaintiff received the knee brace and cane soon thereafter, and an x-ray was performed on December 27, 2018. The x-ray showed arthritis with joint effusion. Defendant Adams also ordered an MRI of Plaintiff's foot ulcer, right knee, and knee osteoarthritis. On December 31, 2018, Plaintiff met with Dr. Mark F. Deatherarge for a surgical consultation, and Dr. Deatherarge recommended that Plaintiff see a podiatrist and opined that amputation of Plaintiff's fourth and

fifth toes might be necessary. Plaintiff met with Defendant Adams on January 11, 2019 and was informed that there no podiatrists readily available at PBSP. Defendant Adams ordered Plaintiff acetaminophen and fluconazole, an antifungal cream. On February 7, 2019, Plaintiff received an MRI of his right foot, which showed a soft tissue edema and enhancement with cellulitis (skin infection) present, and moderate to severe degenerative changes at the talonavicular joints. In or around the same time, Plaintiff received an MRI of his right knee which indicated *inter alia* that there was an extensive tear in Plaintiff's right knee medial meniscus. On February 12, 2019, Plaintiff was seen by a wound team who issued Plaintiff clotrimazole topical cream, an antifungal cream. On February 19, 2019, Plaintiff had his first appointment with a podiatrist, who recommended medication, toe spacers, and possible hammertoe correction surgery if the maceration between the toes did not go away. On February 20, 2019, Plaintiff saw Defendant Adams who submitted a request for Plaintiff to see an orthopedist. As of May 20, 2019, Plaintiff has not been seen by an orthopedist regarding his right knee meniscal tear. Dkt. No. 1 at 3–10.

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled in part on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997). A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104). The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a serious need for medical treatment. *Id.* at 1059–60 (citing *Wood v. Housewright*, 900 F.2d 1332, 1337–41 (9th Cir. 1990)).

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer*

*v. Brennan*, 511 U.S. 825, 837 (1994). In order for deliberate indifference to be established, therefore, there must be a purposeful act or failure to act on the part of the defendant and resulting harm. *See McGuckin*, 974 F.2d at 1060. "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). Similarly, a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference. *See Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A claim of medical malpractice or negligence is insufficient to make out a violation of the Eighth Amendment. *See Toguchi*, 391 F.3d at 1060.

Plaintiff's Eighth Amendment claim suffers from two significant deficiencies.

First, there is no respondeat superior liability in a § 1983 action. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Neither the state of California, the CDCR, nor the CCHCS can be held liable based on the mere fact that it employs the alleged wrongdoers. Similarly, neither Warden Robertson nor Secretary Diaz can be held liable based on the mere fact that they supervise Dr. Adams, Dr. Risenhoover, and RN Waddell. Accordingly, the Eighth Amendment claims against the state of California, the CDCR, the CCHCS, Warden Robertson and Secretary Diaz are DISMISSED with prejudice.

Second, the factual allegations in Plaintiff's complaint contradict his claim that Defendants Dr. Adams, Dr. Risenhoover, and RN Waddell failed to take reasonable steps to address Plaintiff's medical needs. Rather, Plaintiff's allegations indicate that when Plaintiff complained of pain in his toes or knees, prison medical staff, including Defendants Dr. Adams, Dr. Risenhoover, and RN Waddell, took reasonable steps to address his medical needs, such as prescribing medication, ordering x-rays or medication, or arranging for outside consultations. The failure to immediately refer him to a podiatrist or orthopedist, or to immediately order an MRI, is a difference of medical opinion that is insufficient as a matter of law to establish deliberate indifference in violation of the Eighth Amendment. *See Toguchi*, 391 F.3d at 1058. While there are months-long gaps, and in one case a year-long gap, between the medical appointments reported in the complaint, it appears

7

that Plaintiff was generally seen within a couple days to a couple weeks of submitting a sick call request. With respect to the four-month gap from October 23, 2016, when Plaintiff notified Dr. Risenhoover that he was experiencing swelling in his right leg, to February 13, 2017, there are no allegations from which it can be reasonably inferred that this four-month delay was a purposeful failure to act and that this delay caused either the soft tissue edema, cellulitis, moderate to severe degenerative changes in his foot, or the meniscal tear in his right knee.

However, the Court will grant Plaintiff leave to amend this claim if Plaintiff can, in good faith, allege additional facts that, liberally construed, state a cognizable Eighth Amendment violation with respect to the treatment provided by RN Waddell, Dr. Risenhoover, and Dr. Adams. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) ("a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts") (citation and internal quotation marks omitted); *see also Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) (leave to amend "should be granted more liberally to pro se plaintiffs") (citation omitted).

## D. Motion to Appoint Counsel

Plaintiff has filed a motion requesting appointment of counsel. Dkt. No. 4. He states that appointment of counsel is necessary because he is unable to afford counsel; his incarceration and his physical disabilities greatly limits his ability to litigate this action; the issues are complex and require significant research and testimony; there is likely to be conflicting witness testimony and he requires a lawyer's assistance to handle cross-examination; expert testimony and investigation are needed; his case has merit; and his efforts to obtain an attorney have been unsuccessful. *Id.*

There is no constitutional right to counsel in a civil case unless an indigent litigant may lose his physical liberty if he loses the litigation. *See Lassiter v. Dep't of Social Svcs.*, 452 U.S. 18, 25 (1981)[1]; *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997) (no constitutional right to counsel in § 1983 action), *withdrawn in part on other grounds on reh'g en banc*, 154 F.3d 952

---

[1] The Supreme Court clarified its holding in *Lassiter* and prior "right to counsel" cases by stating, "the Court previously had found a right to counsel '*only*' in cases involving incarceration, not that a right to counsel exists in *all* such cases." *Turner v. Rogers*, 564 U.S. 431, 443 (2011).

8

(9th Cir. 1998) (en banc). The decision to request counsel to represent an indigent litigant under § 1915 is within "the sound discretion of the trial court and is granted only in exceptional circumstances." *Franklin v. Murphy*, 745 F.2d 1221, 1236 (9th Cir. 1984). A finding of the "exceptional circumstances" of the plaintiff seeking assistance requires an evaluation of the likelihood of the plaintiff's success on the merits and an evaluation of the plaintiff's ability to articulate his claims pro se in light of the complexity of the legal issues involved. *See Agyeman v. Corrections Corp. of America*, 390 F.3d 1101, 1103 (9th Cir. 2004). Both of these factors must be viewed together before reaching a decision on a request for counsel under § 1915. *See id.* Neither the need for discovery, nor the fact that the pro se litigant would be better served with the assistance of counsel, necessarily qualify the issues involved as complex. *See Rand*, 113 F.3d at 1525 (where plaintiff's pursuit of discovery was comprehensive and focused, and his papers were generally articulate and organized, district court did not abuse discretion in denying request for counsel); *Wilborn*, 789 F.2d at 1331 (that plaintiff may well have fared better with assistance of counsel not enough).

Here, Plaintiff has failed to demonstrate exceptional circumstances requiring appointment of counsel at this time. The Court therefore DENIES Plaintiff's motion requesting appointment of counsel for lack of exceptional circumstances. This denial is without prejudice to the Court's *sua sponte* appointment of counsel at a future date should the circumstances of this case warrant such appointment.

## CONCLUSION

For the foregoing reasons, the Court orders as follows.

1. Plaintiff's motion for appointment of counsel is DENIED. Dkt. No. 4.

2. The Court finds that the complaint's allegation that Defendants Warden Robertson in his official capacity, CDCR Secretary Diaz in his official capacity, the state of California, the CDCR, and the CCHCS acted with deliberate indifference in refusing to provide reasonable accommodations for Plaintiff as a disabled person states a cognizable claim for violation of Plaintiff's rights under the ADA. The Court DISMISSES with prejudice Plaintiff's ADA claims against Defendants Robertson and Diaz in their individual capacities, and Plaintiff's request for

punitive damages for the ADA violations. The Court DISMISSES with prejudice Plaintiff's Eighth Amendment claims against the state of California, the CDCR and the CCHCS; against Defendants Warden Robertson and CDCR Secretary Diaz, and against the remaining individual defendants (Dr. Risenhoover, Dr. Adams, and RN Waddell) in their official capacities.

3. The Court DISMISSES with leave to amend Plaintiff's Eighth Amendment claim. If Plaintiff chooses to file an amended complaint to allege a cognizable Eighth Amendment claim against Dr. Risenhoover, Dr. Adams, and RN Waddell regarding the medical treatment provided for his toes and right knee, he must file the amended complaint within twenty-eight (28) days of the date of this order. The amended complaint must include the caption and civil case number used in this order, Case No. C 19-02620 HSG (PR) and the words "AMENDED COMPLAINT" on the first page. If using the court form complaint, Plaintiff must answer all the questions on the form in order for the action to proceed. Because an amended complaint completely replaces the previous complaints, Plaintiff must include in his amended complaint all the claims he wishes to present, including the ADA claim which the Court has already found cognizable, and all of the defendants he wishes to sue. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). Plaintiff may not incorporate material from the prior complaint by reference. Plaintiff may not change the nature of this suit by alleging new, unrelated claims in the amended complaint. Failure to file an amended complaint in accordance with this order in the time provided will result in the initial complaint remaining the operative complaint; this action proceeding solely on the ADA claim found cognizable above; and defendants Dr. Risenhoover, Dr. Adams, and RN Waddell being dismissed from this action. The Clerk shall include two copies of a blank complaint form with a copy of this order to Plaintiff.

4. The Clerk shall issue summons and the United States Marshal shall serve, without prepayment of fees, a copy of the complaint with all attachments thereto, and a copy of this order upon defendant PBSP Warden Robertson at Pelican Bay State Prison, 5905 Lake Earl Drive, Crescent City, CA 95531, and upon defendants California, CDCR Secretary Diaz, the CDCR, and the CCHCS at CDCR, 151 S Street, Sacramento CA 95811. A courtesy copy of the complaint with attachments and this order shall also be mailed to the California Attorney General's Office.

4. In order to expedite the resolution of this case, the Court orders as follows:

    a. No later than 91 days from the date this Order is filed, Defendants must file and serve a motion for summary judgment or other dispositive motion. If Defendants are of the opinion that this case cannot be resolved by summary judgment, Defendants must so inform the Court prior to the date the motion is due. A motion for summary judgment also must be accompanied by a *Rand* notice so that Plaintiff will have fair, timely, and adequate notice of what is required of him in order to oppose the motion. *Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012) (notice requirement set out in *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), must be served concurrently with motion for summary judgment). A motion to dismiss for failure to exhaust available administrative remedies similarly must be accompanied by a *Wyatt* notice. *Stratton v. Buck*, 697 F.3d 1004, 1008 (9th Cir. 2012).

    b. Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the Court and served upon Defendants no later than 28 days from the date the motion is filed. Plaintiff must bear in mind the notice and warning regarding summary judgment provided later in this order as he prepares his opposition to any motion for summary judgment. Plaintiff also must bear in mind the notice and warning regarding motions to dismiss for non-exhaustion provided later in this order as he prepares his opposition to any motion to dismiss.

    c. Defendants shall file a reply brief no later than 14 days after the date the opposition is filed. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion.

5. Plaintiff is advised that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact – that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents,

11

as provided in Rule 56(c), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand v. Rowland*, 154 F.3d 952, 962–63 (9th Cir. 1998) (en banc) (App. A).

Plaintiff also is advised that a motion to dismiss for failure to exhaust available administrative remedies under 42 U.S.C. § 1997e(a) will, if granted, end your case, albeit without prejudice. You must "develop a record" and present it in your opposition in order to dispute any "factual record" presented by Defendants in their motion to dismiss. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 n.14 (9th Cir. 2003).

(The *Rand* and *Wyatt* notices above do not excuse Defendants' obligation to serve said notices again concurrently with motions to dismiss for failure to exhaust available administrative remedies and motions for summary judgment. *Woods*, 684 F.3d at 939).

6. All communications by Plaintiff with the Court must be served on Defendants' counsel by mailing a true copy of the document to Defendants' counsel. The Court may disregard any document which a party files but fails to send a copy of to his opponent. Until Defendants' counsel has been designated, Plaintiff may mail a true copy of the document directly to Defendants, but once a defendant is represented by counsel, all documents must be mailed to counsel rather than directly to that defendant.

7. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

8. Plaintiff is responsible for prosecuting this case. Plaintiff must promptly keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). Plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility.

9. Any motion for an extension of time must be filed no later than the deadline sought to be extended and must be accompanied by a showing of good cause.

12

10. Plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to the Court for consideration in this case.

This order terminates Dkt. No. 4.

**IT IS SO ORDERED.**

Dated: 11/26/2019

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge